24-1473-cv
*Olivet Univ. v. Newsweek Digital LLC, et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of December, two thousand twenty-four.

PRESENT:    GUIDO CALABRESI,
            SARAH A. L. MERRIAM,
                  *Circuit Judges*,
            JED S. RAKOFF,
                  *District Judge*.[*]

_____

OLIVET UNIVERSITY,

    *Plaintiff-Appellant*,

      v.                                                                    No. 24-1473-cv

NEWSWEEK DIGITAL LLC; NEWSWEEK
LLC; NEWSWEEK MAGAZINE LLC;
NEWSWEEK PUBLISHING LLC; NW
DIGITAL LLC; NW MAGAZINE LLC; NW
MEDIA HOLDINGS CORP.; NAVEED
JAMALI,

---

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

*Defendants-Appellees*,

ALEX ROUHANDEH,

*Defendant.***

_____

FOR PLAINTIFF-APPELLANT:      Yen-Yi Anderson, Anderson and Associates, New York, NY.

FOR DEFENDANTS-APPELLEES:      Cameron Stracher, Sara Tesoriero, Cameron Stracher, PLLC, New York, NY.

Appeal from the judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*).

**UPON DUE CONSIDERATION,** the April 30, 2024, judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Olivet University ("Olivet") appeals from a judgment of the District Court dismissing its Amended Complaint asserting one claim for defamation *per se* against defendants-appellees Newsweek Digital LLC, Newsweek LLC, Newsweek Magazine LLC, Newsweek Publishing LLC, NW Digital LLC, NW Magazine LLC, NW Media Holdings Corp. (collectively "Newsweek"), and Naveed Jamali ("Jamali"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on

---

** The Clerk of the Court is directed to amend the caption as set forth above.

appeal, to which we refer only as necessary to explain our decision to affirm.[1]

## STANDARD OF REVIEW

"We review *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6), accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 175 (2d Cir. 2021). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).

## BACKGROUND

For purposes of our *de novo* review, we accept the following allegations of the operative Amended Complaint as true. "Olivet is a private religious institution consisting of multiple colleges" with "campuses across the United States," founded by Dr. David

---

[1] Although Olivet's Amended Complaint asserts that the District Court had diversity jurisdiction under 28 U.S.C. §1332, the Amended Complaint does not adequately allege an amount in controversy or the citizenship of Newsweek Digital LLC. On November 4, 2024, this Court entered an Order directing the parties to submit supplemental letter briefs by November 12, 2024, addressing whether there is federal subject matter jurisdiction over this case on the basis of diversity jurisdiction. Newsweek timely filed a supplemental brief on November 12, 2024. Olivet filed its brief late, on November 13, 2024. Based on the information contained in, and attached to, the supplemental briefing, we are satisfied that we have diversity jurisdiction over this case. *See, e.g.*, *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) ("We may refer to evidence outside of the pleadings to resolve issues of jurisdictional fact." (citation and quotation marks omitted)); *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) ("Where the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record" to establish that the amount in controversy exceeds the jurisdictional amount.). We construe Olivet's supplemental brief as seeking leave to amend the Amended Complaint on appeal pursuant to 28 U.S.C. §1653 to assert the undisputed jurisdictional allegations set forth in the supplemental briefing; Newsweek does not object. The request is granted.

Jang in 2004. J. App'x at 10. Olivet had "close ties to" Newsweek from 2013 to 2018; several individuals in leadership at Newsweek's parent company at the time, IBT Media Inc., were affiliated with Olivet. J. App'x at 13.

In 2018, IBT Media was "facing an investigation by the Manhattan District Attorney's Office relating to" financial matters. J. App'x at 13. Olivet was under investigation in 2018 as well, and on October 31, 2018, a grand jury issued a 16-count indictment charging Olivet, its Trustee William Anderson, IBT Media, and others with a scheme to fraudulently "obtain financing from financial institutions, divert the proceeds of the financing and conceal its origins in order to fund . . . needs unrelated to the stated purpose of the financing, and maintain a credit profile sufficient to continue" the scheme.[2] J. App'x at 38. Anderson, Olivet, and others were also charged with laundering the proceeds of that scheme.

Anderson pled guilty to money laundering in the second degree and to participating in a scheme to defraud in the first degree. On February 11, 2020, Olivet, proceeding through its counsel as authorized by its Board of Trustees, pled guilty to (a) Count 4 of the indictment, charging it with felony falsification of business records in the first degree; and (b) a lesser included charge of Count 3 of the indictment, specifically,

---

[2] On *de novo* review, we agree with the District Court that the indictment and related documents, each of which is a public judicial document in the criminal case against Olivet, are "integral" to the Amended Complaint and appropriately considered at the motion to dismiss stage. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). It is furthermore "clear on the record that no dispute exists regarding the authenticity or accuracy of the document[s]" and no dispute exists as to their relevance. *Id.* (citations and quotation marks omitted). Indeed, no party challenges the District Court's reliance on these documents in reaching its decision to dismiss the Amended Complaint, and Olivet relies on these documents in its briefing. *See, e.g.*, Appellant's Br. at 12.

conspiracy in the fifth degree, a misdemeanor. Count 3 of the indictment charged Olivet and others with conspiring to commit "Money Laundering in the Second Degree," a class C felony. J. App'x at 44. Under the terms of Olivet's plea agreement, the felony falsification of business records charge was eventually reduced to a misdemeanor, and all remaining counts of the indictment, except for the conspiracy charge, were dismissed.

On July 2, 2022, Newsweek published an online article written by Jamali titled: *New York Shuts Down Olivet University Amid Federal Money-Laundering Probe* (the "2022 article"). J. App'x at 21. The 2022 article discussed a Department of Homeland Security ("DHS") investigation into whether Olivet-founder Jang and his followers were "part of a scheme to launder money for criminals in China and the United States." J. App'x at 21. The article stated, in relevant part: "Olivet University was thrust into the national media spotlight in 2018 when the Manhattan District Attorney announced indictments in a fraud and money laundering probe unrelated to the current federal investigation. Olivet pleaded guilty to money laundering, as did several of Jang's followers and companies they ran." J. App'x at 22.

On March 28, 2023, Newsweek published an online article co-authored by Jamali and Alex Rouhandeh[3] titled: *California Moves to Shut Down David Jang's Olivet University as Feds Circle*. J. App'x at 28. This article reported on an investigation undertaken by the California Attorney General into Olivet's alleged "violations of education regulations." J. App'x at 28. It also gave a brief overview of DHS's "unrelated

---

[3] Olivet voluntarily dismissed its claim against defendant Alex Rouhandeh without prejudice on January 23, 2024.

investigation into whether Olivet laundered money," and noted twice that Olivet had "pleaded guilty in 2020 to a money laundering charge." J. App'x at 29.

Olivet filed this action against Newsweek and Jamali asserting one count of defamation *per se* based on the statement contained in both articles that Olivet had "pleaded guilty to money laundering," J. App'x at 14, 15, asserting that it had in fact pled guilty only to falsification of business records in the first degree and conspiracy in the fifth degree. Defendants moved to dismiss Olivet's Amended Complaint for failure to state a claim based on (1) Olivet's failure to plausibly allege that the challenged statement is substantially false, and (2) New York's fair report privilege.

The District Court granted defendants' motion, finding that Olivet had failed to plausibly allege that the challenged statement is substantially false. *See generally Olivet Univ. v. Newsweek Digit. LLC*, No. 23CV05670(NRB), 2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024). This appeal followed.

## DISCUSSION

On appeal, Olivet argues primarily that the District Court erred in concluding that the challenged statement is substantially true. We disagree.

"Under New York law a defamation plaintiff must establish five elements" to state a claim for defamation *per se*, including, as relevant here, the "falsity of the defamatory statement." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). "'Substantial truth' is the standard by which New York law, and the law of most other jurisdictions, determines an allegedly defamatory statement to be true or false . . . . [I]f an allegedly defamatory statement is 'substantially true,' a claim of libel is legally insufficient and

6

should be dismissed." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) (citations and quotation marks omitted).

On *de novo* review, and substantially for the reasons stated by the District Court in its thorough and well-reasoned decision, we conclude that Olivet has failed to plausibly allege that the challenged statement is false. As the District Court correctly concluded, although Olivet pled guilty to *conspiracy* to commit money laundering, as opposed to substantive money laundering, "such technical inaccuracies, especially in the inherently complicated context of criminal law, cannot be the basis of a defamation claim where the substance of the reported [charge] would 'not have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Olivet Univ.*, 2024 WL 1892563, at *4 (quoting *Tannerite Sports*, 864 F.3d at 243). Indeed, under New York law, a conspiracy is simply "an agreement to commit an underlying substantive crime" – here, money laundering – "coupled with an overt act committed by one of the conspirators in furtherance of the conspiracy." *People v. Caban*, 833 N.E.2d 213, 217 (N.Y. 2005). Olivet pled not just to some vague, conceptual "conspiracy" but to a series of detailed statements regarding the purpose and means of that conspiracy. *See* J. App'x at 64-66. In this case, "the truth is so near to the facts as published that . . . no legal harm has been done." *Tannerite Sports*, 864 F.3d at 243 (citation and quotation marks omitted).[4]

---

[4] We also reject the argument that the District Court failed to evaluate the challenged statement in the correct context. The District Court appropriately considered "the full context of the Articles" at issue. *Olivet Univ. v. Newsweek Digit. LLC*, No. 23CV05670(NRB), 2024 WL 1892563, at *5 (S.D.N.Y. Apr. 30, 2024); *see also Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) ("When a court interprets a publication in an action for defamation, the

In any event, even if the District Court had erred in concluding that the challenged statement is substantially true, we would affirm the dismissal of the Amended Complaint based on New York's fair report privilege. New York law provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding . . . ." N.Y. Civ. Rights Law §74. "New York courts adopt a liberal interpretation of the 'fair and true report' standard of §74 so as to provide broad protection to news accounts of judicial proceedings. A statement is deemed a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017) (citations and quotation marks omitted). Whether Olivet pled guilty to substantive money laundering or to a conspiracy to commit money laundering is a nuance lost on most readers, and "[n]ewspapers cannot be held to a standard of strict accountability for use of legal terms of art in a way that is not precisely or technically correct by every possible definition." *Becher v. Troy Publ'g Co.*, 589 N.Y.S.2d 644, 646 (N.Y. App. Div. 1992) (citation and quotation marks omitted).

We have little trouble concluding that any inaccuracy in Newsweek's reporting would "not produce a different effect on a reader than would a report containing the precise truth." *Friedman*, 884 F.3d at 93 (citation and quotation marks omitted); *see also Tacopina v. O'Keeffe*, 645 F. App'x 7, 9 (2d Cir. 2016) (summary order) (finding that the

---

entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader." (citation and quotation marks omitted)).

fair report privilege barred plaintiff's defamation claims because "the inaccuracies in the Article would not have meaningfully impacted reader perception, and stemmed simply from an inability to perfectly comprehend legalese"). Therefore, the fair report privilege also bars Olivet's defamation claim.

We have considered Olivet's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court